Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG COHEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiff,<br><br>        v.<br><br>YOGAWORKS, INC., ROSANNA MCCOLLOUGH, VANCE CHANG, PETER L. GARRAN, MICHAEL A. KUMIN, MICHAEL J. GEREND, BRIAN COOPER, GREAT HILL PARTNERS, L.P., GREAT HILL EQUITY PARTNERS V, L.P., GREAT HILL INVESTORS, LLC, COWEN AND COMPANY, LLC, ROTH CAPITAL PARTNERS, LLC, STEPHENS INC., GUGGENHEIM SECURITIES, LLC, and IMPERIAL CAPITAL, LLC,<br><br>        Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

- 1 -

Plaintiff Craig Cohen, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by YogaWorks, Inc. ("YogaWorks" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents and press releases; and (c) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities, other than Defendants, who purchased YogaWorks securities pursuant and/or traceable to the Company's initial public offering commenced on or about August 10, 2017 and closed on August 16, 2017 (the "IPO"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") (the "Class").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

4.      Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) as the alleged misleading public filings and press releases entered this district and the Company's headquarters are located in this district.

Class Action Complaint for Violation of the Federal Securities Laws

5.    In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased the Company's securities at artificially inflated prices pursuant and/or traceable to the Company's IPO and was economically damaged thereby.

7.    YogaWorks is a Delaware corporation with principal executive offices located at 5780 Uplander Way, Culver City, California 90230. YogaWorks' securities trade on NASDAQ under the ticker symbol "YOGA."

8.    Defendant Rosanna McCollough ("McCollough") is the Company's President, Chief Executive Officer ("CEO"), and member of the Board of Directors (the "Board") and held these positions at the time of the IPO. Defendant McCollough signed or authorized the signing of the Registration Statement (defined below) and issuance of the Offering Materials (defined below).

9.    Defendant Vance Chang ("Chang") is YogaWorks' Chief Financial Officer ("CFO") and held this position at the time of the IPO. Defendant Chang signed or authorized the signing of the Registration Statement and issuance of the Offering Materials.

10.    Defendant Peter L. Garran ("Garran") serves at the Chairman of the Board of YogaWorks and held this position at the time of the IPO. Defendant Garrnan signed or authorized the signing of the Registration Statement and issuance of the Offering Materials. At the time of the IPO, Garran was also a partner at Great Hill Partners, L.P. Garran serves on YogaWorks' Audit Committees.

11.    Defendant Michael A. Kumin ("Kumin") serves as a director of the Board and was a director at the time of YogaWorks' IPO. Defendant Kumin signed or

Class Action Complaint for Violation of the Federal Securities Laws

authorized the signing of the Registration Statement and issuance of the Offering Materials. At the time of the IPO, Kumin was a Managing Partner of Great Hill Partners, L.P.

12.     Defendant Michael J. Gerend ("Gerend") serves as a director of the Board and was a director at the time of YogaWorks' IPO. Defendant Gerend signed or authorized the signing of the Registration Statement and issuance of the Offering Materials. Defendant Gerend serves as the Chairman of the Compensation Committee and is a member of the Audit Committee.

13.     Defendant Brian Cooper ("Cooper") serves as a director of the Board and was a director at the time of YogaWorks' IPO. Defendant Cooper signed or authorized the signing of the Registration Statement and issuance of the Offering Materials. Defendant Cooper serves as the Chairman of the Audit Committee and is a member of the Compensation Committee.

14.     Defendants McCollough, Chang, Garran, Kumin, Gerend, and Cooper are collectively referred to hereinafter as the "Individual Defendants."

15.     Each of the Individual Defendants:

(a)     Participated in the preparation of and signed (or authorized the signing of) the Registration Statement and/or an amendment thereto, and the issuance of the Offering Materials;

(b)     directly participated in the management of the Company;

(c)     was directly involved in the day-to-day operations of the Company at the highest levels;

(d)     was privy to confidential proprietary information concerning the Company and its business and operations;

(e)     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(g)     approved or ratified these statements in violation of the federal securities laws.

16.     Defendant Great Hill Partners, L.P., through its subsidiaries and/or affiliated companies, including Great Hill Equity Partners V, L.P. and Great Hill Investors, LLC (collectively, "Great Hill"), acquired YogaWorks in July 2014 and was a controlling shareholder at the time of the IPO.  Great Hill Partners, L.P. has executive offices in Boston, Massachusetts. As of August 28, 2018, Great Hill Equity Partners V, L.P. was the record holders of 11,589,865 or 71.5% of the outstanding shares of YogaWorks. Great Hill Investors, LLC was the record holder of 38,699, or 0.2%, of the outstanding shares of YogaWorks as of August 28, 2018. According to the Prospectus, Great Hill "will have significant influence over [YogaWorks'] management and policies for the foreseeable future."

17.     Defendant Cowen and Company, LLC ("Cowen") served as an underwriter for YogaWorks' IPO. In the IPO, Cowen agreed to purchase 2,277,600 shares of YogaWorks' common stock, exclusive of any over-allotment option. Cowen maintains executive offices at 599 Lexington Avenue, 20th Floor, New York, New York 10022 and is authorized to conduct business in California.

18.     Defendant Roth Capital Partners, LLC ("Roth") served as an underwriter for YogaWorks' IPO. In the IPO, Roth agreed to purchase 700,800 shares of YogaWorks' common stock, exclusive of any over-allotment option. Roth maintains executive offices at 888 San Clemente Drive, Newport Beach, California 92660 and is authorized to conduct business in California.

19.     Defendant Stephens Inc. ("Stephens") served as an underwriter for YogaWorks' IPO. In the IPO, Stephens agreed to purchase 2,277,600 shares of YogaWorks' common stock, exclusive of any over-allotment option. Stephens

Class Action Complaint for Violation of the Federal Securities Laws

maintains executive offices at 111 Center Street, Little Rock, Arkansas 72201 and is authorized to conduct business in California.

20.     Defendant Guggenheim Securities, LLC ("Guggenheim") served as an underwriter for YogaWorks' IPO. In the IPO, Guggenheim agreed to purchase 1,752,000 shares of YogaWorks' common stock, exclusive of any over-allotment option. Guggenheim maintains executive offices at 330 Madison Avenue, New York, New York 10017 and is authorized to conduct business in California.

21.     Defendant Imperial Capital, LLC ("Imperial") served as an underwriter for YogaWorks' IPO. In the IPO, Imperial agreed to purchase 292,000 shares of YogaWorks' common stock, exclusive of any over-allotment option. Imperial maintains executive offices at 10100 Santa Monica Boulevard, Suite 2400, Los Angeles, California 90067 and is authorized to conduct business in California.

22.     Defendants Cowen, Roth, Stephens, Guggenheim, and Imperial are referred to herein as the "Underwriter Defendants."

23.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared tens of millions of dollars in fees collectively. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from YogaWorks, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b)     The Underwriter Defendants also demanded and obtained an agreement from YogaWorks and the Individual Defendants that YogaWorks would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that

- 6 -

Class Action Complaint for Violation of the Federal Securities Laws

YogaWorks had purchased millions of dollars in directors' and officers' liability insurance.

(c)     Representatives of the Underwriter Defendants also assisted YogaWorks and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of YogaWorks, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning YogaWorks' most up-to-date operational and financial results and prospects.

(d)     In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with YogaWorks' lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which YogaWorks securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about YogaWorks would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and YogaWorks' management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, YogaWorks' existing problems as detailed herein.

(e)     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

Class Action Complaint for Violation of the Federal Securities Laws

24.     YogaWorks is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superio*r and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

25.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to YogaWorks under *respondeat superior* and agency principles.

26.     YogaWorks, the Individual Defendants, Great Hill, and the Underwriter Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

27.     On June 23, 2017, YogaWorks filed a registration statement on Form S-1 for a proposed initial public offering. The June 23, 2017 registration statement was followed by several amendments, the last of which was filed on August 10, 2017 which became effective that day (as amended, the "Registration Statement").

28.     On August 11, 2017, YogaWorks filed a Prospectus pursuant to rule 424(b)(4) (the "Prospectus" and with the Registration Statement, the "Offering Materials") with the SEC.

29.     On August 16, 2017, YogaWorks completed its IPO in which it offered 7.3 million shares at $5.50 per share.

30.     Founded in 1987, YogaWorks was a single yoga studio in Santa Monica, California. In July 2014, Great Hill acquired YogaWorks for $45.6 million in cash. Great Hill currently owns around 70% of YogaWorks' outstanding common stock.

31.     YogaWorks claims that it is "one of the largest and fastest growing providers of high quality yoga instruction in the U.S." and "the only national, multi-discipled yoga instruction company."

32.     YogaWorks generates most of its revenue from offering a variety of yoga classes at its studios. The in-studio classes offer yoga instruction for all skill levels in

Class Action Complaint for Violation of the Federal Securities Laws

various yoga styles. The prices for classes vary by location and region, but on average students pay $90-$135 per month for an unlimited membership. YogaWorks offers six-month and annual prepaid memberships, as well as class packages in increments of 10 to 20 classes.

33.   YogaWorks also derives revenue from teacher training programs and online subscriptions of MyYogaWorks.com. The teacher training program began in 1990 and has graduated approximately 12,000 students. These graduates are considered "ambassadors of the YogaWorks brand." YogaWorks offers a 200-hour and a 300-hour training program, taught in 16 countries at YogaWorks studios as well as non-YogaWorks studios. Tuition for the 200-hour program is approximately $3,500 and for the 300-hour program is approximately $4,200. MyYogaWorks.com provides online subscriptions for access to YogaWorks' on-demand video library of over 1,100 classes. In 2017, MyYogaWorks.com streamed approximately 700,000 classes to over 25,000 users. YogaWorks charges $15 per month for the subscription which is reduced to $5 per month for those with YogaWorks studio memberships.

34.   Profitable studio acquisitions are vital to YogaWorks' growth and financial viability as since its inception, this was YogaWorks' focus.

35.   At the time of the IPO, YogaWorks owned 50 studios in California, New York City, Boston, and the Baltimore/Washington, D.C. area.

36.   YogaWorks' growth is driven mainly through acquisition of yoga studios in highly fragmented markets. The Registration Statement stated, "Through acquisitions, we believe we can quickly gain students, grow our market share and build on the operating momentum of these acquired businesses."

37.   YogaWorks' strategy to grow by acquisition rather than organic growth is driven by its purported belief that acquisitions of existing studios that already have a student base is an "effective, profitable and risk-mitigating way to enter a new regional market" rather than building new studios and waiting for attendance to ramp up.

Class Action Complaint for Violation of the Federal Securities Laws

38.     According to the Offering Materials, when deciding on acquisition targets, YogaWorks claims to apply a "multi-factor evaluation system that allows us to quickly assess potential acquisition candidates and continually add qualified new targets to our active outreach process." In the Offering Materials, YogaWorks stated that it intended to increase its yoga studio count from 50 studios as of August 2017 to over 250 studios in the next several years.

39.     The Offering Materials boasts YogaWorks' "proven post-acquisition integrated methodology that is designed to facilitate a seamless student, teacher and staff transition to the YogaWorks operating model." In the Offering Materials YogaWorks claims it has "a proven history of retaining and improving the student and teacher focus of each studio or chain of studios acquired."

40.     In violation of the Securities Act, Defendants negligently issued untrue statements of material facts, and omitted to state material facts required to be stated from, the Offering Materials presented to the public in support of the IPO.

41.     At the time of the commencement of this action, YogaWorks' shares are trading at $0.44, or 92% below the IPO price.

**Defendants' Disclosure Obligations**

42.     In their capacities as signers of the Offering Materials and/or an issuer, statutory seller, offeror, control persons, and/or underwriter of the shares sold pursuant to the Offering Material, each of the Defendants are strictly liable for such misstatements and omission therefrom.

43.     Due to the materially deficient Offering Materials, Defendants have also violated their independent, affirmative duty to provide adequate disclosures about adverse conditions, risk and uncertainties. Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii) requires that the materials incorporated in a registration statement disclose all "known trends or uncertainties" reasonably expected to have a material unfavorable impact on the Company's operations.

44.     Defendants further violated their independent, affirmative duty to adequately "provide under the caption 'Risk Factors' a discussion of the most significant factors that make the offering speculative or risky." In contravention to Item 503 of SEC Reg. S-K, 17 C.F.R. §229.503(c), Defendants failed to disclose several risks that have already materialized at the time of the IPO that were unknown to Plaintiff and other YogaWorks investors.

45.     As alleged herein, Defendants failed in their duty by inducing public investment in YogaWorks by means of the materially untrue, inaccurate, misleading, and/or incomplete Offering Materials. As a result of the materially misleading Offering Materials, YogaWorks' share price was inflated at the time of the IPO through which YogaWorks raised approximately $40.15 million in gross proceeds.

46.     YogaWorks' stock has consistently traded lower than the $5.50 IPO price, due to the truth regarding YogaWorks' business and financial prospects.

47.     As alleged herein, Plaintiff, individually and on behalf of similarly situated Class (defined below) members who also acquired YogaWorks' securities pursuant and/or traceable to the IPO, now seeks to obtain a recovery for the damages suffered as a result of Defendants' violations of the Securities Act.

**Adverse Trends Known To Defendants At The Time Of The IPO, But Unknown To Investors**

*Material Adverse Trend of Declining Studio Profitability*

48.     While YogaWorks touted in the Offering Materials its ability and method of acquiring and integrating profitable yoga studios as the basis for achieving its aggressive growth target of 250 studios and higher gross margins in the near future, unbeknownst to investors, YogaWorks had been experiencing declining student visits, studio class size, and lower revenue per studio.

49.     While YogaWorks has added 23 studios since 2015, it has seen the number of students visiting its studios and studio profitability steadily decline in the quarters leading up to the IPO and continuing on to the present.

Class Action Complaint for Violation of the Federal Securities Laws

50.     Despite a 50% increase in the number of studios, students per class size has declined from 16.6 students per class in 2015, to 15.7 students per class in 2017, and 13.9 students per class by the third quarter of 2018. Further, total student visits per quarter for the last four consecutive quarters of 2016 leading up to the IPO declined despite increasing the number of classes. Student visits also declined quarter over quarter leading up to the IPO, declining from 789,677 in the first quarter of 2016, to 760,707 in the second quarter of 2017, and from 754,595 in first quarter of 2016 to 705,979 in the second quarter of 2017. Similarly, students per class decreased from 17.6 in first quarter of 2016 to 16.9 in first quarter of 2017 and from 16.3 in second quarter of 2016 to 15.6 in second quarter of 2017.

51.     The reduction in the number of student visits resulted in few classes per studio and lower revenue per studio. For the five consecutive quarters leading up to the IPO, classes per studio steadily declined. Classes per studio also declined quarter over quarter leading to the IPO. These facts, not disclosed to investors, directly contradict the Company's claims in the Offering Materials that the decline in revenue was due to a shift in memberships to class packages.

52.     Moreover, although the topline number of classes and student visits increased through the addition of new studios, those metrics have only increased by 22% and 29%, respectively, from 2015 to 2017, failing to correlate to with the 50% in total number of studios.

53.     As a result of YogaWorks' lack of growth, declining revenue and declining studio profitability, YogaWorks was unable to fund any new acquisitions for the five quarters leading up to the IPO from second quarter of 2016 through second quarter of 2017. Thus, starting in second quarter of 2017, YogaWorks was forced to acquire less expensive and less efficient smaller studios to increase the number of studios and has consistently departed from its stated practice in the Offering Materials of acquiring studios that generate between $500,000 and $700,000 in revenue to acquire smaller, less efficient studios. For example, in the third quarter of 2017,

Class Action Complaint for Violation of the Federal Securities Laws

YogaWorks acquired three new studios for $445,000, or an average of $148,333 per studio. In the fourth quarter of 2017, YogaWorks acquired thirteen new studios for a total cost of $5,995,090, or an average cost of $461,160 per studio.

54.   These facts were not disclosed to investors in the Offering Materials.

*Material Undisclosed Adverse Trend of Increasing Corporate Overhead and Costs Reduce YogaWorks' Profits*

55.   Despite adding new studios, in which YogaWorks should have experienced economies of scale and lower costs as a percentage of overall net revenue, according to the Offering Materials, YogaWorks' corporate Selling, General, and Administrative Expenses ("SG&A") was increasing in terms of whole dollars and as a percentage of net revenue in the run up to the IPO, so much so that the expenses often accounted for the entirety of YogaWorks' net loss.

56.   Before the IPO, YogaWorks' stock-based compensation awards to executives increased, despite YogaWorks' poor financial performance which caused a further drag on YogaWorks' net loss which would work together to entirely negate any positive studio-level performance.

*Material Undisclosed Adverse Trend of Deteriorating Financial Markets that Would Necessitate the Recording of a Significant Goodwill Impairment*

57.   The Offering Materials were deficient in their omission of certain financial metrics that were trending downward and which would ultimately lead to a significant goodwill impairment taken by YogaWorks at the end of 2017.

58.   The Offering Materials state:

In 2015, we recorded an impairment of goodwill of $0.9 million. We did not record any impairment losses related to goodwill in 2016. As of December 31, 2016, our goodwill balance was $17.7 million. Accounting rules require the evaluation of our goodwill at least annually, or more frequently when events or changes in circumstances indicate that the carrying value of such assets may not be recoverable. Such indicators are based on market conditions and the operational performance of our business. In testing goodwill for impairment, if the

- 13 -
Class Action Complaint for Violation of the Federal Securities Laws

implied fair value of the goodwill is less than the reporting unit's carrying amount, then goodwill is impaired and is written down to the implied fair value amount. If a significant amount of our goodwill were deemed to be impaired, our business, financial condition and results of operations could be materially adversely affected.

We incurred a net loss of $2.6 million for the three months ended March 31, 2017, $1.5 million for the three months ended March 31, 2016, $9.5 million in 2016 and $9.2 million in 2015 and had net cash provided by operating activities of $0.8 million in 2016. If we continue to experience net losses or our cash flows from operating activities decline or become negative, it could require us to lower our assessment of the fair value of our business. If this were to occur, we could be required to record additional material impairment charges to goodwill or other intangible assets which could have a material adverse effect on our business, financial condition and results of operations.

59.     What the Offering Materials failed to disclose, however, was that YogaWorks' net loss for the quarter ended June 30, 2017, which was complete before the IPO, but its financial statements were not disclosed until after, had increased by more than 57% over the same quarter of the prior year, which quarterly cash flows from operating activities decreasing from $450,069 to $821,650. The declines were part of a quarter-over-quarter trend known by YogaWorks management at the time of the IPO but undisclosed in the Offering Materials that showed deteriorating net losses that would continue throughout 2017 and ultimately necessitate the recording of a goodwill impairment of $7.5 million at the end of 2017, with an additional goodwill impairment of $2.5 million assessed in the second quarter of 2018.

*Material Adverse Trends and Conditions that Caused the Delay of the IPO*

60.     The IPO was YogaWorks' second attempt at going public, having abandoned its previous offering on the eve of the requested effective date, citing "market conditions."

61.     On June 23, 2017, YogaWorks filed with the SEC its Registration Statement which sought to register common stock of YogaWorks. The Registration

Statement was the result of months of correspondence with the SEC in a process that began back at least until April 2017.

62.    On July 10, 2017, YogaWorks filed a preliminary prospectus as an amendment to the registration statement which announced the intention to sell 5 million shares priced between $12 and $14 each.

63.    On July 17, 2017, Defendant Chang, on behalf of YogaWorks and Defendants Cowen, Stephens, and Guggenheim, on behalf of the Underwriter Defendants, wrote separately to the SEC to request that YogaWorks' Registration Statement be accelerated and declared effective as of July 19, 2017.

64.    Despite these efforts for acceleration, just two dates later on July 20, 2017, YogaWorks announced that it would be postponing its public rollout due to "market conditions." No further explanation was offered.

65.    There was much skepticisms over the market conditions cited by YogaWorks for the abandonment of its intention to go public. *Marketwatch* pointed to the fact that the second quarter of 2017 was the healthiest initial public offering market in the prior two years, with double the number of offerings over the prior quarter, according to PricewaterhouseCoopers, with the S&P 500 and NASDAQ hitting all-time highs the day prior to YogaWorks' postponement announcement.

66.    Further, *Business Insider* pointed to the CBOE Volatility Index ("VIX"), a measure of the stock market's expectation of volatility calculated by the Chicago Board Options Exchange ("CBOE") colloquially known as the "fear index," was "locked near its lowest levels on record" at the time of the abandoned offering.

67.    Thus, there existed a trend know to YogaWorks that was likely, and did, impact its financial performance going forward at the time of the IPO, as evidenced by the delayed offering date and downsized IPO that the Defendants required to include in its disclosures in the Offering Materials for the benefit of investors, which they did not do.

- 15 -

68.     The trends that rendered YogaWorks unable to support its upsized valuation of $12 to $14 per share have proven to have a continuous negative impact on YogaWorks since the IPO as evidenced by the Company's stock price decline.

## YogaWorks Goes Public By Means Of Materially False And Misleading Offering Materials

69.     YogaWorks' Registration Statement was declared effective on August 10, 2017.

70.     On August 11, 2017, the Prospectus was subsequently filed with the SEC on Form 424B4 an offered 7.3 million shares of YogaWorks common stock at the reduced price of $5.50 per share. The Offering Materials stated the intended use of the IPO proceeds was for capitalization and financial flexibility, repayment of a $3.3 million note to Great Hill and a $7 million loan to Deerpath Funding LP, funding an acquisition, and for working capital and other general corporate purposes. The IPO reaped net proceeds of $35 million.

71.     The Offering Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and/or was not prepared in accordance to the rules and regulations governing its preparation concerning three categories: (1) studio-level economics; (2) the reasons for declining revenue; and (3) corporate infrastructure costs and economies of scale.

*Materially Misleading Statements Regarding Studio-Level Economics*

72.     In the Offering Materials, YogaWorks represented that its yoga studios had "strong studio-level economics" as a result of targeting studios with average annual revenues of at least 500,000 and a return of capital within two to four years of opening the new studio, stating in relevant part:

Strong Studio-Economics

We seek to generate attractive studio-level margins by increasing the average number of students per class which in turn provides better return on our fixed costs, such as teacher salaries and rent. ***We target studios with average annual revenues between $500,000 to $700,000 and a return on our invested capital to be within two to four years of***

- 16 -

Class Action Complaint for Violation of the Federal Securities Laws

***opening a new studio.*** We approach our acquisition targets seeking similar returns. ***We believe that our strong studio-level economics are important for us to grow our studio base and successfully execute our acquisition strategy.***

(Emphasis added).

73.     In order to obtain a complete return on invested capital within two to four years, the studio-level margins would have to be at least 20%.[1]

74.     In the Offering Materials, YogaWorks reported Studio-Level EBITDA for the three months ended March 31, 2017 and March 31, 2016 of $3.2 million and $4.4 million, respectively, and Studio-Level EBITDA margins for the same period of 22.9% and 29.1%, respectively. YogaWorks also reported Studio-Level EBITDA for both the year-ended December 31, 2016 and December 31, 2015 of $12.4 million and Studio-Level EBITDA margins for the same periods of 22.5% and 25.6%, respectively.

75.     The above statements were materially false and misleading when made because YogaWorks' Studio-Level EBITDA margin for the second quarter ended June 30, 2017, at the time of the IPO was only 17.39%, well below the necessary 20% needed to recoup its investment within two to four years. Moreover, while Yoga Works disclosed Studio-Level EBITDA for 2016 of 22.5%, it omitted the fact that Studio-Level EBITDA margin for the fourth quarter 2016 was only 19.11%.

76.     The above statements were further materially misleading because YogaWorks was experiencing a known trend of decreasing Studio-Level EBITDA margin below the 20% threshold. For the second quarter ended June 30, 2017, Studio-Level EBITDA margin declined to 17.39% from 19.36% for the second quarter ended June 30, 2016. While YogaWorks' Studio-Level EBITDA increased slightly in the first quarter of 2017 as a result of higher class attendance from New Year's resolutions, Defendants knew it would not last as YogaWorks was acquiring smaller, more

---

[1] YogaWorks Presentation at Cowen's Future of the Consumer Conference. April 2018, at 18. Available at: https://ir.yogaworks.com/static-files/1624037d-bee7-473a-9e28-08776ae8aade.

Class Action Complaint for Violation of the Federal Securities Laws

inefficient studios and seeing a significant decline in class attendance. Indeed, this trend continued as YogaWorks continued to experience Studio-Level EBITDA margin declines below the necessary threshold of 19.4%, 18.8%, 18.2%, and 14.9% for the third quarter of 2017, fourth quarter of 2017, first quarter of 2018, and second quarter of 2018, respectively.

77.   The above statements were also materially false and misleading because, as a result of YogaWorks' deteriorating financial position, it had begun acquiring smaller, less efficient studios that did not meet the criteria set forth in the Offering Materials of generating $500,000 to $700,000 in revenue per year. For the third quarter 2017, YogaWorks acquired only three new studios for a total of $445,000. This trend continued into the fourth quarter 2017 during which Yoga Works acquired 13 studios for a total of $5.6 million. or an average cost of $430,000 per studio. While YogaWorks made no acquisitions in the fist quarter of 2018, it acquired five studios for a total of $721,930 during second quarter of 2018.

78.   Analysts commented that this "lack of transparency in terms of organic growth adds to the uncertainty" of YogaWorks' future.

*Materially Misleading Statements Regarding the Reasons for the Decline in Revenue*

79.   YogaWorks claimed that its revenue for the first quarter of 2017 was lower due to a shift in business and pricing strategy towards selling more class packages, rather than monthly memberships and assured investors that the difference would be offset by an increase in deferred revenue, stating in relevant part:

> With the adoption of our more flexible pricing strategy in July 2016, our sales mix has shifted toward a higher number of class-package sales and a corresponding decline in monthly membership sales. We anticipate this trend to continue at a decreasing rate over time as students in our existing studios purchase class packages more frequently than memberships and as we acquire and open additional studios, and expect a more balanced mix between class packages and memberships over time. ***We expect that the impact of this shift in sales***

Class Action Complaint for Violation of the Federal Securities Laws

*mix will be a reduction in the mount of revenue recognized in a given period by an increase in deferred revenue liability associated with class package sales*, as well as a decrease in student visits, as students on class packages tend to visit studios less than students with membership.

 (Emphasis added).

80.     With respect to the first quarter of 2017 revenue, YogaWorks claimed that the 7.5% quarter to quarter reduction in revenue was based on it selling more class packages, stating in relevant part:

During the first quarter of 2017, we sold more class packages and paid-in-full memberships (which require a longer period of time to be recognized as revenue in comparison to our other sales options) than we did in the first quarter in 2016 (in which we had a higher percentage of monthly membership fee revenue in comparison to the first quarter of 2017), which resulted in less revenue being recognized during the first quarter of 2017. *We believe the implementation of our strategy to sell more class packages allows us to better serve our students and will draw a broader student base over time*. We anticipate our deferred revenue, subject to refunds, to be recognized as net revenue over time as it is deemed earned based on pattern of usage or the applicable product's expiration period.

(Emphasis added).

81.     Further in the Offering Materials, YogaWorks reported second quarter of 2017 preliminary results, stating in relevant part:

- Net revenues of between $12.3 million and $12.6 million; and

- Visits of between 700,000 and 720,000.

*The decrease in net revenues from $13.3 million for the quarter ended June 30, 2016 was primarily due to a larger portion of our sales for the quarter ended June 30, 2017 being recognized as deferred revenue. The increase in deferred revenue was driven by our initiation of a more flexible pricing strategy in July 2016* that, as expected, has resulted in a shift in sales toward class packages which require recognition of revenue over a longer time period than other sales options. This sales mix shift resulted in less revenue being recognized

Class Action Complaint for Violation of the Federal Securities Laws

during the second quarter of 2017 than the same quarter in 2016, in which we had a higher percentage of monthly membership revenue.

Our decision to offer class packages at all of our studios also impacted our number of visits, as students on class packages tend to visit studios less than students with memberships, which primarily led to the decrease from 754,567 visits for the quarter ended June 30, 2016. *We anticipate this trend to continue at a decreasing rate over time as students in our existing studios purchase class packages more frequently than memberships and as we acquire and open additional studios, and expect a more balanced mix between class packages and memberships over time.* While our strategy to sell more class packages has had an impact on both our net revenues and visits during the transition period, we believe the implementation of this strategy allows us to better serve our students and will draw a broader student base as consumers favor more flexible pricing options.

(Emphasis added).

82.    The above statements were materially false and misleading when made because the shift to class packages was actually because of the increasing trend of fewer student visits during 2016 which resulted in fewer class per studio and the acquisition of smaller, less efficient studios.

83.    Further, YogaWorks reported deferred revenue of $4.5 million for the first quarter-ended March 31, 2017, $4.6 million for the year-ended December 31, 2016 and $5.2 million for the year-ended December 31, 2015. Thus, contrary to the Offering Materials, deferred revenue was higher when YogaWorks relied on monthly revenue. Further, despite adding more studios, total revenue plus deferred revenue was actually declining.

84.    Defendants also represented in the Offering Materials that YogaWorks was "uniquely positioned to grow via acquisitions due to…. (vi) our tested integration procedures," which they claim enabled YogaWorks to "preserve the acquired studio's unique appeal…while successfully increasing visits and net revenues under our ownership."

Class Action Complaint for Violation of the Federal Securities Laws

*Materially Misleading Statements Regarding Corporate Infrastructure Costs and Economies of Scale*

85.     At the time of the IPO, Defendants claimed that YogaWorks would benefit from economies of scale and from centralized management and less overhead per capita. Further, Defendants stated that YogaWorks had a corporate infrastructure in place to support its future acquisition growth such that YogaWorks grew, its overhead costs would become a smaller percentage of revenue of profitability, stating in relevant part:

> In preparation for our continued growth, we have built out our corporate infrastructure over the past several years. ***We now have the corporate, regional and studio-level management personnel in place, as well as the information technology platform, to support our future growth and acquisition strategy, without significant new investments in corporate infrastructure***

(Emphasis added).

86.     Additionally, YogaWorks claimed that is strong studio-level economics would allow it to achieve economies of scale, thereby reducing overhead costs as a percentage of revenue, stating in relevant part:

> ***As our studio base grows, expenses for our corporate and regional overhead should become a smaller percentage of our net revenues and profitability.***

(Emphasis added).

87.     The above statements were materially false and misleading when made because, at the time of the IPO, YogaWorks' corporate overhead expenses were increasing as a percentage of sales and profitability. For the second quarter ended June 30, 2017, YogaWorks incurred "Other general and administrative expenses"[2] of $2.7 million, or 21.7% of net revenue as compared to $2.6 million for the same quarter in

---

[2] Defined as "general and administrative expenses that are corporate and regional expenses and not incurred by our studios…"

Class Action Complaint for Violation of the Federal Securities Laws

2016, or 19.8% of revenue. YogaWorks knew this trend would continue as it was acquiring smaller, less efficient studios that generated revenue substantially below the $500,000 to $700,000 level Defendants claimed in the Offering Materials. In fact, this trend was continuing into the third quarter of 2017, half of which was over at the time of the IPO in which YogaWorks incurred "Other general and administrative expenses" of $3.1 million, or 22.6% of net revenue as compared to $2.5 million for the same quarter of 2016, or 18.2% of revenue.

88.   Further, corporate overhead continued to chip away at earnings throughout the relevant period as Defendants increased stock-based compensation for its named executives after the IPO, at the expense of shareholders.

89.   Announced on August 16, 2017, YogaWorks closed its IPO, selling 7,300,000 shares in the IPO price of $5.50 per share thereby raising proceeds for YogaWorks of approximately $35.3 million after removing underwriting discounts, commissions, and expenses.

### The Offering Materials Failed To Warn Of Risks That Had Already Materialized At The Time Of The IPO

90.   The Offering Materials contained generic and boilerplate risk warnings in contravention of SEC directives under Item 503, that failed to disclose several known risks that had already materialized at the time of the IPO.

91.   The Offering Materials stated:

***Our growth strategy is highly dependent on our ability to successfully identify and acquire studio targets and integrate their operations with ours.***

Our growth strategy primarily contemplates expansion through targeted acquisitions of other yoga studio businesses. Implementing this strategy depends on our ability to successfully identify opportunities that complement our businesses, share our business and company philosophy and operate in markets that are complementary to our operations and the communities in which we operate. We will also

- 22 -

need to assess and mitigate the risk of any target opportunity, to acquire targets on favorable terms and to successfully integrate their operations with ours. *We may not be able to successfully identify opportunities that meet these criteria, or, if we do, we may not be able to successfully negotiate, finance, acquire and integrate them. Even if we enter into confidentiality agreements or letters of intent with potential studios, we may not be able to complete the acquisition. If we are unable to identify and acquire suitable studios, our revenue growth rate and financial performance may fall short of our expectations. If we are successful in acquiring studio targets, we may not be able to successfully integrate the operations of these studios with ours, to execute the growth objectives of our combined operations or to realize the revenue opportunities or cost savings that may be assumed.* In addition, any such opportunity may require us to raise additional capital, which may be dilutive to our existing shareholders, or require us to incur additional indebtedness. If our analysis of the suitability of a studio or group of studios for acquisition is incorrect, we may not be able to recover our capital investment in acquiring such studios.

(Emphasis added).

92.    This risk factor was wholly deficient as it failed to warn of the state of affairs then existing at YogaWorks – that it was targeting and acquiring low performing studios and was not able to successfully integrate these studios in a manner that led to revenue growth.

93.    YogaWorks' risk factors also failed to warn of existing issues with YogaWorks' newly-acquired studios, claiming:

*Our recently acquired or newly opened studios may negatively impact our financial results in the short-term, and may not achieve sales and operating levels consistent with our existing studios on a timely basis, or at all.*

*We have actively pursued new studio growth, primarily through acquisitions, and plan to continue doing so in the future.* Many of our studios are still relatively new as YogaWorks-branded studios, as we have opened or acquired 23 studios since January 1, 2015. We cannot assure you that our recently acquired or newly opened studios will be successful or reach the sales and profitability levels of our existing

- 23 -

Class Action Complaint for Violation of the Federal Securities Laws

studios. ***New studio acquisitions may negatively impact our financial results in the short term due to the effect of studio conversion costs, loss of students or teachers at the acquired studios, lower class package and drop-in class sales and lower contribution to overall profitability during the initial period following an acquisition***. Acquired and newly opened studios require a transition period to build their sales volume and their student base and, as a result, generally have lower margins and higher operating expenses, as a percentage of net revenues, when initially acquired or opened. ***Newly acquired and opened studios may not achieve membership levels, class package and drop-in class sales and operating levels consistent with our existing studio base on a timely basis, or at all.*** We cannot assure you that our recently acquired or newly opened studios will generate revenue, cash flow or profitability levels comparable with those generated by our existing studios. These risks may have an adverse effect on our financial condition, operating results and growth rate.

(Emphasis added).

94.    At the time of the IPO, the risk had already materialized as newly acquired and opened studios were vastly underperforming with YogaWorks being forced to curtail any further expansion to address its plummeting finances for more than a year preceding the IPO and in the immediate aftermath thereof.

95.    The Offering Materials also stated:

***If we fail to attract new students and teachers and retain existing students and teachers, it could have an adverse impact on our growth strategy as we may not be able to increase the number of visits to our studios or students that go through our teacher training.***

The performance of our studios and success of our growth strategy is largely dependent on our ability to continuously attract new students and teachers and retain existing students and teachers. We cannot be sure that we will be successful in these efforts, or that visits to our studio classes and teacher trainings or participation in MyYogaWorks.com will not materially decline. There are numerous factors that could lead to a decline in visits at established studios or that could prevent us from increasing our student visits at newer or acquired studios, including harm to our reputation, a decline in our ability to deliver quality yoga

Class Action Complaint for Violation of the Federal Securities Laws

classes and teacher trainings at a competitive cost, the opening or acquisition of new studios or hosting of additional teacher trainings that may have the potential to cannibalize store sales in existing areas, the heightened presence of direct and indirect competition in the areas in which the studios are located, the decline in the public's interest in fitness through yoga, a deterioration of general economic conditions and a change in consumer spending preferences or buying trends. As a result of these factors, we cannot be sure that our student visits will be adequate to maintain or permit the expansion of our operations. ***A decline in student visits levels may have a material adverse effect on our business, financial condition, results of operations and growth rate.***

(Emphasis added).

96. In reality, at the time of the IPO, student visits were already in decline quarter over quarter and negatively impacting YogaWorks' business.

97. The Offering Materials also failed to warn about risks associated with YogaWorks' inability to increase its customer base, stating in relevant part:

*If we are unable to anticipate student preferences and provide high quality yoga offerings, we may not be able to maintain or increase our membership base, sales from class packages, drop-ins and teacher trainings, participation in MyYogaWorks.com and profitability.*

Our success in maintaining and increasing our student base depends on our ability to identify and originate trends as well as to anticipate and react to changing customer preferences and trends in a timely manner. All of our yoga offerings and retail products are subject to changing consumer preferences that cannot be predicted with certainty. ***If we are unable to introduce new yoga offerings or retail products in a timely manner, or our new yoga offerings or retail products are not accepted by our students, our competitors may introduce similar yoga offerings or retail products in a more timely fashion, which could negatively affect our rate of growth.*** Our new yoga offerings or retail products may not receive acceptance as preferences could shift rapidly to different types of healthy lifestyle offerings or athletic apparel or away from these types of yoga offerings or retail products altogether, and our future success depends in part on our ability to anticipate and respond to these changes. ***Failure to anticipate and respond in a timely manner to changing customer***

Class Action Complaint for Violation of the Federal Securities Laws

*preferences could lead to, among other things, lower class visits and lower retail sales and excess inventory levels.* Even if we are successful in anticipating customer preferences, our ability to adequately react to and address those preferences will in part depend upon our continued ability to provide high-quality yoga offerings and retail products. Our failure to address student preferences could result in a decrease in net revenues, which could have a material adverse effect on our financial condition.

(Emphasis added).

98.     At the time of the IPO, YogaWorks was already suffering from the ill-effects of its inability to meet customer preferences and convert those customers into increased revenues with lower class visits and revenue per visit leading to increased net losses for YogaWorks.

99.     With respect to YogaWorks' goodwill asset, the Offering Materials state in relevant part:

*Any further impairment of goodwill could adversely affect our financial condition and results of operations.*

In 2015, we recorded an impairment of goodwill of $0.9 million. We did not record any impairment losses related to goodwill in 2016. As of December 31, 2016, our goodwill balance was $17.7 million. Accounting rules require the evaluation of our goodwill at least annually, or more frequently when events or changes in circumstances indicate that the carrying value of such assets may not be recoverable. *Such indicators are based on market conditions and the operational performance of our business*. In testing goodwill for impairment, if the implied fair value of the goodwill is less than the reporting unit's carrying amount, then goodwill is impaired and is written down to the implied fair value amount. *If a significant amount of our goodwill were deemed to be impaired, our business, financial condition and results of operations could be materially adversely affected.*

We incurred a net loss of $2.6 million for the three months ended March 31, 2017, $1.5 million for the three months ended March 31, 2016, $9.5 million in 2016 and $9.2 million in 2015 and had net cash provided by operating activities of $0.8 million in 2016. *If we continue to experience net losses or our cash flows from operating activities*

- 26 -

*decline or become negative, it could require us to lower our assessment of the fair value of our business. If this were to occur, we could be required to record additional material impairment charges to goodwill or other intangible assets which could have a material adverse effect on our business, financial condition and results of operations.*

(Emphasis added).

100.    At the time of the IPO, YogaWorks had previously, and was continuing to experience continued net losses and lowered cash flows from operating activities which would ultimately necessitate the assessment of more than $10 million in goodwill impairment charges within the year of the IPO on the basis of trends existing at the time of the IPO.

101.    Therefore, at the time of the IPO it was evident that YogaWorks' finances were already being impacted by several of the adverse trends identified herein, yet YogaWorks avoided its responsibilities under Item 503 to make fulsome disclosures to Plaintiff and the Class. As a result, investors were harmed when the risks then known, but undisclosed, materialized and caused the YogaWorks' share price to fall.

**POST-IPO EVENTS CAUSE YOGAWORKS' STOCK PRICE TO FALL AS THE ADVERSE CONDITIONS KNOWN PRIOR TO THE IPO COME TO A HEAD AND NEGATIVELY IMPACT YOGAWORKS' FINANCIAL PERFORMANCE**

102.    On September 21, 2017, YogaWorks announced its second quarter financial results for the period ending June 30, 2017. YogaWorks reported net revenue of $12.5 million as compared to $13.3 million for the same period of the previous year, a net loss of $4.4 million, nearly double that of the same period of the previous year, and Studio-Level EBITDA of $2.2 million as compared to $2.6 million for the same period of the previous year. Although YogaWorks blamed the decline in net revenue on the shift from monthly memberships to class packages, deferred revenue only increased $0.5 million, while student visits, number of classes, and students per class were down quarter over quarter.

Class Action Complaint for Violation of the Federal Securities Laws

103.   On this news, YogaWorks' stock price dropped from $4.00 per share on September 21, 2017 to $3.53 per share on September 22, 2017, a drop of over 11%, and continued to decline to $2.83 per share on September 28, 2017 as investors reacted to the negative financials and growing losses.

104.   On April 2, 2018, YogaWorks announced its financial results for the fourth quarter of 2017 and full year 2017 by filing a non-timely annual report with the SEC on Form 10-K, along with a Form 12b-25 indicating that YogaWorks was unable to timely file its annual report "due to a delay in finalizing a goodwill impairment charge related to the book value of the Company, relative to the Company's currently market capitalization"). For 2017, YogaWorks recorded net revenue of $54.5 million (as compared to $55.1 million in 2016) and a net loss of $23.4 million – more than double the $9.5 million loss recorded in 2016. YogaWorks' hand-picked non-GAAP metric Studio-Level EBITDA also declined from $12.4 million to $10.7 million.

105.   Additionally, for the fourth quarter of 2017, YogaWorks recorded $454,000 in stock base compensation expenses, an increase from the $2,000 expenses recorded in the prior year, and capping a fiscal year where the Company doled out nearly $2.6 million in stock-based compensation to management who oversaw the deterioration of YogaWorks' financial condition.

106.   For 2017, YogaWorks recorded a goodwill impairment charge of $7.5 million, which represented over one-third of its' prior goodwill asset, "primarily due to projected cash flows and the Company's decline in market capitalization since the launch of the IPO."

107.   On this news, YogaWorks' stock price fell from $2.88 per share on April 2, 2018 to $2.35 per share on April 3, 2018, a 18.4% decline and over 50% below the IPO price.

108.   On August 14, 2018, YogaWorks announced its financial results for the second quarter of 2018. YogaWorks reported a $2.4 million increase in net revenues

Class Action Complaint for Violation of the Federal Securities Laws

1   over the same quarter of 2017, but a $2.3 million increase in net loss, despite the fact
2   that YogaWorks raised its studio count during the quarter.

3       109.   Making matters worse, YogaWorks again recorded a goodwill impairment
4   during the second quarter of 2018, recording an additional $2.5 million impairment for
5   the quarter.

6       110.   On this news, YogaWorks' stock price fell from $1.86 to close at $1.09
7   per share, an additional 41%, on August 15, 2018.

8       111.   On December 12, 2018, YogaWorks filed an 8-K with the SEC,
9   announcing that on December 6, 2018 it received a letter from NASDAQ stating that
10  the market value of the publicly held shares of YogaWorks for the prior thirty business
11  days fell below the exchange's $5 million minimum value and thus, YogaWorks was
12  subject to delisting if it was unable to regain compliance. YogaWorks then received
13  another similar letter from NASDAQ on December 12, 2018 for its noncompliance
14  with NASDAQ's $1.00 minimum share price requirement.

15      112.   On this news, YogaWorks' share price fell from $0.64 per share to close
16  at $0.59 per share on December 13, 2018, or over 6.5%.

17      113.   At the time of the filing of this complaint, YogaWorks' stock is trading at
18  $0.44 or 92% below the IPO price.

19      114.   As stated herein, YogaWorks' statements in the Offering Materials, taken
20  individually and collectively, were materially false and misleading because they failed
21  to disclose and mispresented adverse facts that existed at the time of the IPO.

22      115.   Accordingly, Plaintiff and the Class has been injured.

23      116.   Defendants violated their disclosure obligations because the Offering
24  Materials materially misrepresented and failed to adequately disclose the truth
25  concerning the several known trends negatively impacting YogaWorks' business at the
26  time of the IPO, including, *inter alia*: (i) declining studio profitability; (ii) the impact
27  of increased corporate overhead; (iii) declining financial metrics that would ultimately
28

Class Action Complaint for Violation of the Federal Securities Laws

1  lead to a substantial impairment charge and (iv) the conditions that led to the

2  Defendants to postpone the initial offering.

3  **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

4  117.  Plaintiff brings this action as a class action pursuant to Federal Rule of

5  Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than

6  Defendants who purchased or otherwise acquired YogaWorks securities in its IPO or

7  purchased YogaWorks securities thereafter in the stock market pursuant and/or

8  traceable to the Company's Offering Materials issued in connection with the IPO and

9  were damaged thereby. Excluded from the Class are Defendants, the officers and

10  directors of the Company, members of the Individual Defendants' immediate families

11  and their legal representatives, heirs, successors or assigns and any entity in which the

12  officers and directors of the Company have or had a controlling interest.

13  118.  The members of the Class are so numerous that joinder of all members is

14  impracticable. There were 7.3 million shares were sold in the IPO.  Since the IPO, the

15  Company's common stock has actively traded on NASDAQ. While the exact number

16  of Class members is unknown to Plaintiff at this time and can be ascertained only

17  through appropriate discovery, Plaintiff believes that there are hundreds, if not

18  thousands of members in the proposed Class. Record owners and other members of the

19  Class may be identified from records maintained by YogaWorks or its transfer agent

20  and may be notified of the pendency of this action by mail, using the form of notice

21  similar to that customarily used in securities class actions.

22  119.  Plaintiff's claims are typical of the claims of the members of the Class as

23  all members of the Class are similarly affected by Defendants' wrongful conduct in

24  violation of federal law that is complained of herein.

25  120.  Plaintiff will fairly and adequately protect the interests of the members of

26  the Class and has retained counsel competent and experienced in class and securities

27  litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

28

121.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

122.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the Securities Act was violated by Defendants as alleged herein;

(b) Whether the Offering Materials were negligently prepared and contained materially misleading statements and/or omitted material information required to be stated therein;

(c) the extent to which members of the Class have sustained damages and the proper measure of damages

(d) A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

123.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

Class Action Complaint for Violation of the Federal Securities Laws

**FIRST CLAIM**
**Violation of Section 11 of**
**The Securities Act Against All Defendants**

124. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

125. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Defendants.

126. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

127. YogaWorks is the registrant for the IPO. Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

128. As issuer of the shares, YogaWorks is strictly liable to Plaintiff and the Class for the misstatements and omissions.

129. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

130. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

131. Plaintiff acquired YogaWorks shares pursuant and/or traceable to the Registration Statement for the IPO.

132. Plaintiff and the Class have sustained damages. The value of YogaWorks securities has declined substantially subsequent to and due to Defendants' violations.

Class Action Complaint for Violation of the Federal Securities Laws

## SECOND CLAIM
### Violation of Section 12(a)(2) of
### The Securities Act Against All Defendants

133.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein.

134.   This Count does not sound in fraud. Any proceeding allegations of fraud, fraudulent conduct, or improper motive are specifically excluded from this Count. Plaintiff does not allege that Defendants had scienter or fraudulent intent, which are not elements of this claim.

135.   Defendants offered, sold and/or solicited a security, namely shares of YogaWorks' securities by means of the IPO identified above, or were-controlling persons of YogaWorks or of those who offered and sold YogaWorks securities. The Offering Materials' contained untrue and/or misleading statements of material fact that the Defendants in the exercise of reasonable care should have known were false.

136.   Defendants actively solicited the sale of YogaWorks to serve their own financial interests.

137.   At the time of purchase of YogaWorks' securities, Plaintiff and other members of the Class did not know that the representations made to them by the Defendants in connection with the distribution of shares and the matters described above were untrue, and did not know the above described omitted material facts, were not disclosed.

138.   As a result, Plaintiff and Class members are entitled to tender YogaWorks they purchased and receive from Defendants the consideration paid for those shares with interest thereon, less the amount of any income received thereon, or damages resulting from Defendants' conduct.

139.   Defendants are liable to Plaintiff and Class members pursuant to Section 12 (a)(2) of the Securities Act, as seller of the securities in connection with the IPO.

140.   This Action is brought within three years from the time that the securities upon this Count is brought were sold to the public, and within one year from the time

when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

## THIRD CLAIM
### Violation of Section 15 of
### The Securities Act Against Individual Defendants

141.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

142.   This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

143.   Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of YogaWorks within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause YogaWorks to engage in the acts described herein.

144.   Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

145.   By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

b.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.      Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 27, 2018                Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        /s/ Laurence M. Rosen
                                        Laurence M. Rosen, Esq. (SBN 219683)
                                        355 S. Grand Avenue, Suite 2450
                                        Los Angeles, CA 90071
                                        Telephone: (213) 785-2610
                                        Facsimile: (213) 226-4684
                                        Email: lrosen@rosenlegal.com

                                        Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws