**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE YOGAWORKS, INC. SECURITIES LITIGATION** | **Case No.: CV 18-10696-CJC (SKx) (Consolidated with CV 19-00970-CJC (SKx))**<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Dkts. 48, 50)** |

## I. INTRODUCTION

In these consolidated cases, Lead Plaintiff Inter-Local Pension Fund GCC/IBT seeks damages for alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 on behalf of all those who purchased YogaWorks, Inc. ("YogaWorks") securities in YogaWorks' initial public offering. Before the Court are two motions to dismiss: one filed by Defendants Vance Chang, Brian Cooper, Peter L. Garran, Michael J. Gerend, Great Hill Equity Partners V, L.P., Great Hill Investors, LLC, Great Hill

Partners, L.P., Michael A. Kumin, Rosanna McCollough, and YogaWorks (the "YogaWorks Defendants") (Dkt. 48), and one filed by Defendants Cowen and Company, LLC, Guggenheim Securities, LLC, Imperial Capital, LLC, Roth Capital Partners, LLC, and Stephens Inc. (the "Underwriter Defendants") (Dkt. 50). For the following reasons, the motions are **GRANTED,** and the Consolidated Complaint is **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND.**[1]

## II. BACKGROUND

YogaWorks is a yoga instruction company offering studio classes, teacher training programs, and online subscriptions to an on-demand video library of yoga classes. (Dkt. 39 [Consolidated Complaint, hereinafter "CC"] ¶¶ 30–32.) The company filed a Registration Statement for a proposed initial public offering ("IPO") on June 23, 2017, and amended that statement several times, the last of which was filed on August 10, 2017. (*Id.* ¶ 37.) On August 11, 2017, it filed a Prospectus, which was incorporated into the Registration Statement. (*Id.* ¶ 37.) And on August 16, 2017, YogaWorks completed its IPO, netting proceeds of $35 million. (*Id.* ¶¶ 37–38.)

Plaintiff, which bought stock in the IPO, alleges that the Registration Statement and the Prospectus (together, the "Offering Materials") were negligently prepared and contained untrue statements of material facts, or omitted facts needed to make the statements not misleading. (*Id.* ¶ 39.) Although the Registration Statement did not paint a completely rosy picture of YogaWorks' business—projecting, for example, a decline in net revenues and student visits—it allegedly omitted material facts from Q2 2017 financial statements "demonstrating multiple significant year-over-year negative trends

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for December 9, 2019, at 1:30 p.m. is hereby vacated and off calendar.

that also reflected adversely on the Company's studio-level profitability, ability to successfully acquire and integrate studios and to reduce costs by leveraging corporate overhead and scale, and the Company's long-term acquisition plan." (*Id.* ¶¶ 50–51.)

On September 22, 2017, YogaWorks filed its 10-Q for Q2 2017, thereby releasing the financial information allegedly omitted from the Offering Materials. (*Id.* ¶ 79.) The released information reflected a net loss of $4.4 million (nearly double that of the same period of the previous year), adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") losses over ten times greater than the same period of the previous year, and studio-level EBITDA of $2.2 million (as compared to $2.6 million for the same period of the previous year). (*Id.*)

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).

## IV. DISCUSSION

Defendants argue Plaintiff's claims are barred by the statute of limitations. (Dkt. 48 at 12–15; Dkt. 50-1 at 2.) The statute of limitations for Securities Act claims is "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m; *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1223 (C.D. Cal. 2013). This means that the statute of limitations begins "when the plaintiff did or should have actually discovered that the defendant made an 'untrue statement or omission.'" *Fed. Deposit Ins. Corp. as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*, 2012 WL 5900973, at *3 (C.D. Cal. Nov. 21, 2012) (analyzing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010)). A plaintiff did or should have actually discovered misstatements when a "reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *Id.* (citations omitted).

Plaintiff filed this case on December 27, 2018. Therefore, Plaintiff's claims are time-barred if Plaintiff had enough information about false or misleading statements in the Offering Materials by December 27, 2017 to sufficiently plead a complaint.

The Court finds that Plaintiff had enough information to plead this complaint before December 27, 2017. The Complaint presented here alleges that Defendants made false and material misstatements or omissions, in the Offering Materials. Each of the alleged material misstatements, misleading statements, and omitted material facts, described in paragraphs 49–76 of the Consolidated Complaint and reflected in the chart below, are clearly alleged to be false and misleading because they omitted Q2 2017 financial results that were disclosed in September 2017:

| Alleged False and Misleading Statement | Reason the Statement Was False or Misleading |
|---|---|
| "Our financial statements for the quarter ended June 30, 2017 are not yet available." (CC ¶ 49.) | The Company's financial statements for the second quarter were available. (CC ¶ 49.) |
| Presentation of "estimated results for the quarter ended June 20, 2017." (CC ¶ 50.) | Omitted material facts from the Q2 2017 financial statements. (CC ¶ 51.) |
| Revenues and class visits were only temporarily declining due to a strategy shift toward selling more class packages. (CC ¶¶ 52-53.) | Q2 results showed that student visits had been declining since before the shift toward class packages, and therefore could not have been a result of that shift. (CC ¶¶ 54–55.) |
| "As a result of our quality class offerings, talented teachers and solid brand reputation, we have achieved a strong historical financial performance," and "have a proven history of retaining and improving the student and teacher focus of each studio or chain of studios acquired." (CC ¶ 56.) | Omitted material facts from YogaWorks' Q2 2017 financial statements would have shown that growth from these factors was not occurring. (CC ¶ 56.) |
| YogaWorks had a corporate infrastructure in place such that future growth by acquisition would make overhead costs a smaller percentage of revenue and profitability. (CC ¶¶ 57–58.) | Omitted Q2 2017 financial results showed that YogaWorks' corporate overhead expenses were actually increasing as a percentage of sales and profitability. (CC ¶ 59.) |
| YogaWorks had "strong studio-level economics" as a result of targeting studios with average annual revenues of | Omitted Q2 2017 statistics would have shown that YogaWorks was already acquiring smaller, less efficient studios. |

| | |
|---|---|
| at least $500,000. (CC ¶¶ 60–61.) | (CC ¶ 62.) |
| YogaWorks' "leverageable infrastructure," "studio acquisition experience," and "tested integration procedures" enabled YogaWorks to "increas[e] visits and net revenues" for acquired studios. (CC ¶ 64.) | Omitted material facts concerning YogaWorks' "then-present acquisition economics and studio-level performance." (*Id.* ¶ 64.) |
| Generalized possible "Risk Factors" "could" possibly occur and "could have a material adverse effect on [YogaWorks'] business. (CC ¶ 65.) For example, "net losses" were a "possibility." (*Id.*) | What were presented as possible risks had actually already happened. As shown in the Q2 2017 financial statements, net losses had already increased, net cash flows had already decreased, and cash loss was increasing. (CC ¶¶ 65–67.) |
| "Our growth strategy is highly dependent on our ability to successfully identify and acquire studio targets and integrate their operations with ours. . . . We may not be able to successfully identify opportunities that meet these criteria, or, if we do, we may not be able to successfully negotiate, finance, acquire and integrate them." (CC ¶¶ 68–69.) | Omitted Q2 2017 financial statements showed YogaWorks had already been acquiring studios that did not meet its own criteria. (CC ¶ 70 [citing *id.* ¶¶ 51, 59, 62].) |
| "If we fail to attract new students and teachers and retain existing students and teachers, it could have an adverse impact on our growth strategy as we may not be able to increase the number of visits to our studios or students that go through | Q2 2017 financial results showed that student visits were already consistently declining in sequential and year-over-year quarters. (CC ¶ 72 [citing *id.* ¶¶ 54–55].) |

| | |
|---|---|
| our teacher training." (CC ¶ 71.) | |
| "We may expand into markets where we have little or no direct prior experience, and we could encounter unanticipated problems, cost overruns or delays in opening studios in new markets or in the market acceptance of our studios." (CC ¶ 73.) | Omitted Q2 2017 financial results, including net losses and studio-level profitability metrics, showed that YogaWorks was already incurring substantial overhead and studio-level expenses. (CC ¶ 74 [citing *id.* ¶¶ 54–56].) |

Plaintiff argues that the statute of limitations did not begin to run until much later because "YogaWorks' stock price continued to go up and down into 2018," and securities analysts "wrote dozens of positive reports" and "maintained positive ratings and high price targets . . . well into 2018." (Opp. at 6–7.) Plaintiff maintains that it was not until August 2018 that securities analysts began to downgrade their ratings, and it was not until lawsuits were filed in December 2018 that any "public information ever discussed the ***potential*** of Securities Act violations in the Company's IPO." (Opp. at 6–8.) However, analysts' assessment of YogaWorks or Yogaworks' stock's value does not change the fact that before December 27, 2017, Plaintiff had enough information to file a complaint like this one alleging that Defendants made material misstatements, misleading statements, and omitted material facts in the Offering Materials by omitting Q2 2017 financial results that were disclosed in September 2017.[2]

"[T]he cause of action accrues whenever the plaintiff discovered or should have discovered the untrue statement or omission." *F.D.I.C. v. Countrywide Fin. Corp.*, 2012 WL 5900973, at *3 (C.D. Cal. Nov. 21, 2012). Based on the allegations in the Consolidated Complaint, Plaintiff discovered or should have discovered the untrue

[2] For this reason, the parties' requests for judicial notice are **DENIED AS MOOT**. (Dkts. 49, 53.)

statements or omissions before December 27, 2017, since the Q2 2017 financial results were released months before that date. The complaint as pleaded is time-barred.[3]

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. Because the Court does not find that granting leave to amend would be futile here, the Consolidated Complaint is **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND.**

DATED: December 3, 2019

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

[3] Although the complaint occasionally references results from other time periods (*e.g.* CC ¶¶ 59, 62, 63), it does so only as a way of showing that trends apparent from the Q2 2017 results continued. The Consolidated Complaint as pleaded alleges that the Offering Materials were misleading because they omitted Q2 2017 financial results.