JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE YOGAWORKS, INC. SECURITIES LITIGATION | **Case No.: CV 18-10696-CJC (SKx) (Consolidated with CV 19-00970-CJC (SKx))**<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Dkts. 62, 64)** |

## I. INTRODUCTION & BACKGROUND

In these consolidated cases, Lead Plaintiff Inter-Local Pension Fund GCC/IBT seeks damages for alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 on behalf of all those who purchased YogaWorks, Inc. ("YogaWorks") securities in YogaWorks' initial public offering ("IPO"), which closed on August 16, 2017. Plaintiff alleges that the Registration Statement and the Prospectus filed in conjunction with the IPO (together, the "Offering Materials") were negligently prepared and contained untrue statements of material facts, or omitted facts needed to make the

statements not misleading. Defendants are officers and directors of YogaWorks, underwriters for the YogaWorks IPO, and an entity that allegedly controlled YogaWorks and certain of its directors.

On December 3, 2019, the Court granted Defendants' motions to dismiss Plaintiff's Consolidated Complaint (Dkt. 39 [hereinafter "CC"]). (Dkt. 56 [hereinafter "MTD CC Order"].) The Court explained that Plaintiff's claims were barred by the one-year statute of limitations for securities claims because "each of the alleged material misstatements, misleading statements, and omitted material facts . . . [were] clearly alleged to be false and misleading because they omitted Q2 2017 financial results that were disclosed in September 2017." (*Id.* at 4.) Those financial results reflected a net loss of $4.4 million (nearly double that of the same period of the previous year), adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") losses over ten times greater than the same period of the previous year, and studio-level EBITDA of $2.2 million (as compared to $2.6 million for the same period of the previous year). (CC ¶ 51; Dkt. 63, Ex. 2[1].) In other words, the CC made clear that YogaWorks' Q2 2017 financial results disclosed the information underlying Plaintiff's allegations that the Offering Materials were negligently prepared and contained false and misleading statements. (MTD CC Order at 4–8.) Since Plaintiff did not file this case until December 27, 2018, the Court concluded its claims were time-barred. (*Id.* at 8.)

Plaintiff filed its First Amended Complaint ("FAC") on January 14, 2020. (Dkt. 59 [hereinafter "FAC"].) The FAC removes nearly all references to the Q2 2017 financial results[2], and the related allegations that the Offering Materials omitted data

---

[1] "Courts can consider securities offerings and corporate disclosure documents that are publicly available." *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1349 (C.D. Cal. 2014). Accordingly, Defendants' request that the Court take judicial notice of certain YogaWorks SEC filings—which Plaintiff does not oppose (Opp. at 9)—is **GRANTED**.

[2] Paragraph 76 of the FAC describes YogaWorks' announcement of the Q2 2017 results, and some of the contents of those results.

from these results. (*See, e.g.*, Dkt. 62 App'x B [Redline comparing CC and FAC, hereinafter "Redline"] at 67–68 [deleting CC ¶ 51, which described the contents of the Q2 2017 financial statements], 75–76 [deleting most of CC ¶¶ 66–67, which alleged that the statements in the Registration Statement were false and misleading because they omitted material facts shown in the Q2 2017 financial statements].)

Now before the Court are two motions to dismiss the FAC: one filed by Defendants Vance Chang, Brian Cooper, Peter L. Garran, Michael J. Gerend, Great Hill Equity Partners V, L.P., Great Hill Investors, LLC, Great Hill Partners, L.P., Michael A. Kumin, Rosanna McCollough, and YogaWorks (the "YogaWorks Defendants") (Dkt. 62), and one filed by Defendants Cowen and Company, LLC, Guggenheim Securities, LLC, Imperial Capital, LLC, Roth Capital Partners, LLC, and Stephens Inc. (the "Underwriter Defendants") (Dkt. 64). For the following reasons, the motions are **GRANTED**, and the FAC is **DISMISSED WITH PREJUDICE.**[3]

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[3] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for April 27, 2020 at 1:30 p.m. is hereby vacated and off calendar.

To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). The district court may also consider additional facts in judicially noticeable materials, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III. DISCUSSION

The statute of limitations for Securities Act claims is "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m; *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1223 (C.D. Cal. 2013). This means that the statute of limitations begins "when the plaintiff did or should have actually discovered that the defendant made an 'untrue statement or omission.'" *Fed. Deposit Ins. Corp. as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*, 2012 WL 5900973, at *3 (C.D. Cal. Nov. 21, 2012) (analyzing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010)). A plaintiff should have actually discovered misstatements when a "reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *Id.* (citations omitted).

Applying this standard to this case, Plaintiff's claims—filed on December 27, 2018—are time-barred if Plaintiff had enough information about false or misleading statements in the Offering Materials to sufficiently plead a complaint by December 27, 2017. Defendants argue that Plaintiff's claims remain barred by the statute of limitations. Specifically, they argue that removing the references to the Q2 2017 financial results does not change the Court's previous conclusion that the alleged material misstatements, misleading statements, and omitted material facts—which are the same in the FAC as in the CC—are alleged to be false and misleading because they omitted Q2 2017 financial results disclosed in September 2017. (*See* MTD CC Order; Dkt. 62 at 11–16; Dkt. 64-1 at 2.) The Court agrees.

Plaintiff contends that the FAC cannot be dismissed on this basis because it "no longer alleges misleading statements based on omission of the 2Q17 financial results." (Opp. at 5.) But the fact that Plaintiff has now eliminated from the FAC most references to YogaWorks' Q2 2017 financial results does not change the result here. *See J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*, 2019 WL 2329248, at *4 (N.D. Cal. May 31, 2019) (collecting authority that courts may consider prior allegations in determining the plausibility of later pleadings). Plaintiff "cannot avoid application of the statute of limitations by simply deleting from its amended complaint allegations evidencing" that it discovered or should have discovered "the factual basis of its [securities] claim" more than one year before it filed the complaint. *Id.* Nor does removing them from the FAC "simply erase those allegations from the case." *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019). Rather, the Court may consider the CC's allegations "as part of its 'context-specific' inquiry" into whether the FAC plausibly suggests an entitlement to relief "based on its judicial experience and common sense . . . as required under *Iqbal*." *Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010); *see Iqbal*, 556 U.S. at 679 ("Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.”).

As before, the Court concludes that a reasonably diligent plaintiff would have had enough information to plead a plausible complaint before December 27, 2017. The material misstatements, misleading statements, and omitted material facts described in the FAC are unchanged from the CC. And as shown in the following chart, Plaintiff alleges that those statements are false and misleading because they omitted Q2 2017 financial results disclosed in September 2017.

| Alleged False and Misleading Statement | Reason the Statement Was False or Misleading |
|---|---|
| “Our financial statements for the quarter ended June 30, 2017 are not yet available.” (FAC ¶ 51; CC ¶ 49.) | “The Company’s financial statements for the second quarter were in fact available and the Company was aware of them.” (FAC ¶ 51; CC ¶ 49.) |
| Presentation of “estimated results for the quarter ended June 20, 2017.” (FAC ¶ 52; CC ¶ 50.) | Omitted material facts from the Q2 2017 financial statements. (CC ¶ 51.) |
| Revenues and class and studio visits were only temporarily declining due to a strategy shift toward selling more class packages. (FAC ¶¶ 53–54; CC ¶¶ 52–53.) | Q2 results showed that student visits had been declining since before the shift toward class packages, and therefore could not have been a result of that shift. (CC ¶¶ 54–55.) |
| “As a result of our quality class offerings, talented teachers and solid brand reputation, we have achieved a strong historical financial performance,” and | Omitted material facts from YogaWorks’ Q2 2017 financial statements would have shown that growth from these factors was not occurring. (FAC ¶ 56; CC ¶ 56.) |

| | |
|---|---|
| "have a proven history of retaining and improving the student and teacher focus of each studio or chain of studios acquired." (FAC ¶ 56; *see* CC ¶ 56.) | |
| YogaWorks had a corporate infrastructure in place such that future growth by acquisition would reduce overhead costs as a percentage of revenue and profitability. (FAC ¶¶ 57–58; CC ¶¶ 57–58.) | Q2 2017 financial results showed that YogaWorks' corporate overhead expenses were actually increasing as a percentage of sales and profitability. (CC ¶ 59.) |
| YogaWorks had "strong studio-level economics" as a result of targeting studios with average annual revenues of at least $500,000. (FAC ¶ 60; CC ¶¶ 60–61.) | Omitted Q2 2017 statistics showed that YogaWorks was already acquiring smaller, less efficient studios. (CC ¶ 62.) |
| YogaWorks' "leverageable infrastructure," "studio acquisition experience," and "tested integration procedures" enabled YogaWorks to "increas[e] visits and net revenues" for acquired studios. (FAC ¶ 63; CC ¶ 64.) | Omitted material facts concerning YogaWorks' "then-present acquisition economics and studio-level performance." (CC ¶ 64; *see* FAC ¶¶ 55–56.) |
| Generalized possible "Risk Factors" "could" possibly occur and "have a material adverse effect on [YogaWorks'] business. (CC ¶ 65.) For example, "net losses" were a "possibility." (FAC ¶ 64; CC ¶ 64.) | What were presented as possible risks had actually already happened. (FAC ¶ 64.) As shown in the Q2 2017 financial statements, net losses had already increased, net cash flows had already decreased, and cash loss was increasing. (CC ¶¶ 65–67.) |

| | |
|---|---|
| "Our growth strategy is highly dependent on our ability to successfully identify and acquire studio targets and integrate their operations with ours. . . . We may not be able to successfully identify opportunities that meet these criteria, or, if we do, we may not be able to successfully negotiate, finance, acquire and integrate them." (FAC ¶ 65; CC ¶¶ 68–69.) | Omitted Q2 2017 financial statements showed that YogaWorks had already begun acquiring studios that did not meet its own criteria. (FAC ¶ 67 [citing *id.* ¶¶ 59, 61–62]; CC ¶ 70 [citing *id.* ¶¶ 51, 59, 62].) |
| "If we fail to attract new students and teachers and retain existing students and teachers, it could have an adverse impact on our growth strategy as we may not be able to increase the number of visits to our studios or students that go through our teacher training." (FAC ¶ 68; CC ¶ 71.) | Q2 2017 financial results showed that student visits were already consistently declining in sequential and year-over-year quarters. (FAC ¶ 69 [citing *id.* ¶¶ 55–56]; CC ¶ 72 [citing *id.* ¶¶ 54–55].) |
| "We may expand into markets where we have little or no direct prior experience, and we could encounter unanticipated problems, cost overruns or delays in opening studios in new markets or in the market acceptance of our studios." (FAC ¶ 70; CC ¶ 73.) | Omitted Q2 2017 financial results, including net losses and studio-level profitability metrics, showed that YogaWorks was already incurring substantial overhead and studio-level expenses. (FAC ¶ 71; CC ¶ 74 [citing *id.* ¶¶ 54–56].) |

Tellingly, Plaintiff does not argue that it added any new misstatements or omissions to the FAC. Instead, it argues that "damages did not accrue until YogaWorks announced its 2Q18 results on August 14, 2018, which were fatally grim." (Opp. at 6.)

This argument is unfounded. In the August 2017 IPO, YogaWorks shares were offered at a price of $5.50 per share.[4] (Dkt. 63, Ex. 2 at 7.) In the week after the Q2 2017 financial results were disclosed in September 2017, the share price fell to $2.77, and kept plunging. (*Id.* at 10; *see* FAC ¶ 7 [chart of stock price history].) "By the end of [2017], investors lost over 50% of their investment and YogaWorks was described as possibly the worst IPO of the year." (FAC ¶ 6.) The FAC and judicially noticeable materials therefore show that it is simply false that damages did not accrue until mid-2018. *See In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203– 04 (9th Cir. 2002) (explaining that damages for securities claims under Section 11 are "measured by the difference between the amount paid for the security and its price at either the time it was sold or the date the Section 11 claim was filed").[5]

Moreover, the CC made clear that the Q2 2018 financial results were part of a continuing trend of declines in YogaWorks' metrics. (*See* Redline at 94–95; *see* CC ¶ 63 [explaining that declining trends began in Q2 2017 and "continued . . . for the third quarter of 2017, fourth quarter of 2017, first quarter of 2018 and second quarter of 2018"].) To now assert that the Q2 2018 results were somehow significant on their own is unpersuasive.

---

[4] "Because [publicly] traded companies historical stock prices can be readily ascertained and those prices are not subject to reasonable dispute, courts routinely take judicial notice of them." *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1349 (C.D. Cal. 2014). Accordingly, Defendants' request that the Court take judicial notice of YogaWorks' historical stock prices is **GRANTED.**

[5] Plaintiff's argument that damages did not accrue until August 14, 2018 concerns the Court for another reason. Rule 11(b) of the Federal Rules of Civil Procedure imposes a duty upon those who sign pleadings to certify that the pleading or motion is "not being presented for any improper purpose," that the "legal contentions are warranted by existing law," and that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). Here, Plaintiff sold all of its YogaWorks shares between December 7, 2017 and April 16, 2018. (Dkt. 21-2.) Accordingly, the argument that damages did not accrue until August 2018—months after Plaintiff had already sold *all* of its shares—appears baseless.

Nor do allegations Plaintiff added in the FAC regarding the "significance of information later revealed" that "was obscured by rosy analyst reports and company earnings releases" make Plaintiff's claims timely. (*See* Redline at 80–96.) Plaintiff argues that even though YogaWorks' stock price plummeted and facts came out showing Yogaworks' alleged misrepresentations and omissions, Plaintiff was deceived by analyst reports and YogaWorks statements painting a false picture of how the company was doing. (*See, e.g.*, *id.* at 96 [showing added allegation at FAC ¶ 91 that it was not until mid-2018 that analysts suggested YogaWorks' business strategy was faltering].) For example, Plaintiff adds allegations about analyst reports maintaining "buy" and "outperform" ratings.[6] (*See, e.g.*, *id.* at 89–90.) However, the Court has already explained why analysts' assessment of YogaWorks or its stock's value does not change the fact that Plaintiff's claims are untimely. (*See* MTD CC Order at 7.) Plaintiff had enough information to file a complaint plausibly alleging that the Q2 2017 financial results disclosed in September 2017 showed that Defendants made material misstatements, misleading statements, and omitted material facts in the Offering Materials before December 27, 2017.

In sum, Plaintiff discovered or should have discovered the untrue statements or omissions before December 27, 2017, since the Q2 2017 financial results were released months before that date. The claims asserted in the FAC are time-barred for the same reasons as the claims asserted in the CC were time-barred.

//

//

---

[6] Conspicuously, the FAC omits allegations regarding a Seeking Alpha articles published on September 22, 2017 that might have helped a reasonable investor receive notice of Plaintiff's claims. (*See* Redline at 87–90, 92 [deleting most of CC ¶¶ 82–84, 87].)

## IV. LEAVE TO AMEND

The Court has already dismissed Plaintiff's claims for exactly the reasons it dismisses them here, and Plaintiff has failed to cure the deficiency in its claims despite an opportunity to do so. Accordingly, the Court concludes that granting further leave to amend would be futile. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008); *J. Edwards Jewelry Distrib.*, 2019 WL 2329248, at *5 (dismissing with prejudice where the Court granted a motion to dismiss on statute of limitations grounds already addressed in a previous order).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. The FAC is **DISMISSED WITH PREJUDICE.**

DATED: April 23, 2020

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE